```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

CROWN FINANCIAL CORPORATION,    :    Civil No. 12-4120 (JEI/AMD)
                                :
        Plaintiff,               :
                                :             **OPINION**
        v.                       :
                                :
MCDONALD'S CORPORATION,          :
                                :
        Defendant.               :


**APPEARANCES**:

ARCHER & GREINER, P.C.
By: Christopher Gibson, Esq.
    William F. Gill, IV, Esq.
    Maureen T. Coghlan, Esq.
One Centennial Square
P.O. Box 3000
Haddonfield, New Jersey 08033
        Counsel for Plaintiff

MORGAN, LEWIS & BOCKIUS, LLP
By: August W. Heckman, III, Esq.
    Larry L. Turner, Esq.
    Timothy Browne Collier, Esq.
502 Carnegie Center
Princeton, New Jersey 08540
        Counsel for Defendant


**IRENAS,** Senior United States District Judge:

   In this diversity breach of contract suit,[1] both parties assert that the other breached their long-term commercial ground

---

[1] The Court exercises diversity of citizenship subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The parties are completely diverse and the amount in controversy exceeds the statutory minimum.

1

lease for a parcel of land in Ocean City, New Jersey, upon which a McDonald's restaurant is located. At issue is whether Plaintiff Crown Financial Corporation ("Crown"), the lessor, may validly terminate the Lease pursuant to its relevant terms, so that Crown may enter into a new lease, on more favorable terms, with a new lessee.

Crown has filed two separate motions for partial summary judgment on its claims against Defendant McDonald's, the current lessee. McDonald's opposes both motions, asserting that the issues raised by the motions are not ripe for summary judgment because discovery is ongoing. The Court agrees with McDonald's as to the second motion, but not the first. For the reasons stated herein, Crown's first motion for partial summary judgment will be granted, and its second motion for partial summary judgment will be dismissed without prejudice. Also, Crown's attendant Motion to Seal an exhibit in support of its second motion will be granted.

**I.**

The following facts are undisputed for the purposes of the instant Motions.

Ocean City, New Jersey, is a long, narrow barrier island located on New Jersey's coastline. It is a popular tourist destination, with beaches, a large boardwalk, and a downtown shopping district. The "Ninth Street Bridge" (part of the

Stainton Memorial Causeway) is the most direct route between the mainland and these attractions.[2] The parcel of land governed by the Lease is located at the corner of Ninth Street and West Avenue (both major thoroughfare roads)-- approximately two blocks from the center of the downtown shopping district, and six blocks from the beach. (Gill Cert. Ex. B) As Crown succinctly states, "[t]his is a prime location." (Moving Brief, p. 1) McDonald's has operated one of its restaurants at this location since 1978.

McDonald's and Crown's predecessor-in-interest signed the Lease in the summer of 1977. (Compl. Ex. A -- the Lease) Rent was set at $25,000.00 a year, payable in monthly installments of $2,083.33. (Id.) The Lease provides for an initial 25-year term, with four successive five-year "option[s] to extend the term." (Id.) Today, in 2013, McDonald's still pays $2,083.33 in monthly rent, as it has from the beginning of the Lease term.

On May 1, 2012, Crown Cork & Seal Master Trust submitted to Crown a written offer to lease the premises at Ninth and West. (Compl. Ex. B) The Offer proposed a 20-year lease term, to begin on October 12, 2013, with two five-year renewal periods. (Id.) Annual rent would be $160,000.00 ($13,333.33 monthly) for years one through five, and would increase incrementally over time, ending with an annual rent of $257,681.60 ($21,473.47 monthly), if both renewal options are exercised. (Id.) The Offer also

---

[2] See http://www.oceancityvacation.com/about-the-island/island-map.html.

3

includes a purchase option; whereas the Lease between Crown and McDonald's contains no purchase option.  (Id.; Gill Ex. B)

Pursuant to the Lease, on May 14, 2012, Crown sent McDonald's a letter enclosing a copy of the Offer.  (Compl. Ex. C)  Crown stated that it desired to accept the Offer, but also acknowledged its obligation, pursuant to the Lease, to first offer to rent the premises to McDonald's on the same terms and conditions as the Offer.  (Id.)  Crown further stated, "[i]n the absence of [your] election [to relet the premises on the Offer's terms] . . . you shall comply with your obligations to surrender the Premises . . . at the end of the term . . . on and as of October 11, 2013."  (Id.)

Crown wrote this letter even though, in June, 2010, McDonald's had validly exercised one of its four extension options, extending the Lease for a term "commencing on October 12, 2013 and expiring on October 11, 2018."  (Compl. Ex. E)

On May 25, 2012, Kathleen Madigan, McDonald's Senior Counsel wrote to Crown's Assistant General Counsel expressing confusion over Crown's May 14th letter.  (Compl. Ex. D)  Ms. Madigan wrote, "[t]he 'offer' as described in the letter does not comply with [the Lease].  The current term of the Lease continues through October 11, 2018."  (Id.)  Ms. Madigan's letter also sought to exercise McDonald's two remaining options to extend the Lease

4

(with rent remaining at $2,083.33 a month), and stated that the last extension would expire on October 11, 2028. (Id.)

Five days later, on May 30, 2012, Crown filed the instant suit. The Complaint asserts three counts. The first essentially seeks a declaration that Crown can accept the Offer and terminate the Lease without breaching the Lease. The second and third counts respectively assert breach of contract and breach of the duty of good faith and fair dealing.[3]

As noted before, Crown has filed two motions for partial summary judgment. Both motions concern Paragraph 16 of the Lease, which provides in relevant part,

> If at any time during the term of the Lease, Lessor shall desire to accept a bona fide offer received by it to lease the premises for a term commencing at or after the term of this Lease, . . . Lessee shall have the right to relet the premises upon the terms and conditions of such offer by giving Lessor written notice of its election to do so. . . . In the event Lessee fails to notify Lessor of its election . . . Lessor shall have the right to lease the premises to any person upon the terms and conditions contained in [the bona fide offer.]

(Compl. Ex. A)

Crown's first motion asks the Court to rule that Paragraph 16 grants Crown the right to accept bona fide offers (subject to McDonald's right of first refusal) after "the expiration of every individual Lease term" (Moving Brief, p. 2)-- i.e., after 25

---
[3] Although not directly relevant to the instant Motions, McDonald's asserts against Crown counterclaims for declaratory judgment, breach of contract, and breach of the duty of good faith and fair dealing.

5

years, and then again after the expiration of each five-year extension-- not just after McDonald's last successive extension expires.

Crown's second motion asks this Court to hold that Crown Cork & Seal Master Trust's offer is a "bona fide offer" under the Lease.

## II.

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the nonmoving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The role of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.

The Court addresses each Motion in turn.

**A.**

The parties assert differing interpretations of Paragraph 16 quoted above. As already stated, Crown argues that its right to accept bona fide offers arises "at the expiration of every individual Lease term" (Moving Brief, p. 2), whereas McDonald's asserts that Crown's right to accept bona fide offers only arises when the last of McDonald's successive extensions expires-- that is, that "the Lease contemplates a singular Lease term, the duration of which can be extended." (Opposition Brief, p. 7)[4] The parties do not dispute that if the Court accepts Crown's interpretation, Crown could validly accept a bona fide offer[5] to lease the premises beginning October 12, 2013, but if the Court accepts McDonald's interpretation, Crown may only validly accept a bona fide offer to lease the premises beginning October 12, 2028.

---

[4] McDonald's alternatively argues that this issue is not ripe for summary judgment because discovery is ongoing. The Court disagrees. The issue is one of straightforward contract interpretation. While McDonald's argues that the parties' "course of dealing over the past 20 years will [] have an impact on McDonald's argument regarding contract interpretation" (Collier Decl. ¶ 26), there can be no relevant course of dealing evidence to be explored in discovery insofar as the parties do not dispute that the Master Trust Offer is the only offer Crown has ever desired to accept.

[5] As discussed below, McDonald's disputes that the Master Trust Offer is a bona fide offer.

Under New Jersey law[6],

> "[a] lease is a contract between [the lessor] and [lessee] which sets forth their rights and obligations to each other in connection with [the lessor's] temporary grant of possession of its property to [the lessee]. [The Court's] function in interpreting a contract is to give meaning to the symbols of expression chosen by the parties. In doing so, [the Court] look[s] to the words used by the drafters which [it] interpret[s], not in isolation, but as a whole, in order to ascertain their meaning. An important weight in the calculus is the purpose the parties sought to attain by the inclusion of the controverted clause. Under that standard, the interpretation that most fully advances the goals underlying the inclusion of a particular provision will generally be adopted.

*Town of Kearny v. Discount City of Old Bridge, Inc.*, 205 N.J. 386, 411 (2011) (internal citations omitted).

The Court cannot accept McDonald's proposed interpretation of the Lease. The Lease was the result of a significant business transaction between two sophisticated parties dealing at arm's length. It is implausible that the parties intended that McDonald's would pay the same rent for up to 45 years, regardless of inflation or market rates.

Crown correctly observes that the Lease contains no rent escalation clause.[7] The absence of such a clause is important

---

[6] The Lease does not contain a choice of law clause. The parties agree, however, that New Jersey law applies.

[7] *See* Black's Law Dictionary (9th ed. 2009), "escalator clause," "A contractual provision that makes pricing flexible by increasing or decreasing the contract price according to changing market conditions, such as higher or lower taxes or operating costs. . . . Also termed escalation clause."; *see generally* 7-4A Current Leasing Law and Techniques-- Forms § 4A.05[1], "Importance of

because it leaves Paragraph 16 as the sole mechanism for adjusting rent over the potential 45-year life of the lease. The only way to give effect to such a mechanism is to interpret Paragraph 16 as granting the lessor (Crown) the right to accept bona fide offers and terminate McDonald's lease at the end of each individual lease term, not solely after McDonald's exhausts the last of its options to extend. *Cf. Sunrise Mall Assocs. v. Import Alley,* 211 A.D.2d 711, 711-12 (N.Y. App. Div. 1995) (observing that the parties to a long-term commercial ground lease "could not have reasonably expected the cap [on rent] to remain in place beyond [the initial 20-year term of the lease]. If that were the case, the plaintiff landlord would never receive an increase in the fixed minimum rent during the renewal term, a consequence that could not have been contemplated by the parties.").

Crown's first motion for partial summary judgment will be granted.

**B.**

Crown also asks this Court to hold as a matter of law that the Offer from Crown Cork & Seal Master Trust is a "bona fide offer" under the Lease. The Court declines to do so at this time.

---

Escalation Clauses" ("Escalation clauses usually link rent increases to increases in one (or several) indicators(s) of economic change. . . . The goal of an escalation clause is to preserve the value of the landlord's cash flow by increasing the base rent over the lease term in line with inflation.").

Crown admits that it is "indirectly related" to Crown, Cork & Seal, and that the Master Trust is the pension fund through which the assets of the employee benefit plans of Crown, Cork & Seal are maintained and invested. According to Crown, it and Crown, Cork & Seal share the same corporate parent. It is also undisputed that "a member of the Master Trust Investment Committee is also an officer of Crown." (Reply Brief, p. 3)

McDonald's contends, and this Court agrees, that it should be allowed to further explore, at least through deposition testimony, facts "establish[ing] the nature, scope and timing of the alleged arm's length dealing between Crown and [the Master Trust]." (Opposition Brief, p. 7)

Crown argues against further discovery asserting that because McDonald's has stipulated to the commercial reasonableness of the Offer, there is nothing more to know, and the Offer must be held "bona fide." The Court disagrees. Commercial reasonableness is indeed relevant to (perhaps even highly probative of) whether an offer is bona fide. But "bona fide" and "commercially reasonable" are not synonymous. "Bona fide" is defined as "made in good faith; without fraud or deceit." Black's Law Dictionary (9th ed. 2009); Merriam-Webster Dictionary Online, http://www.merriam-webster.com (last visited Nov. 4, 2013). A commercially reasonable offer can be made with a deceitful or fraudulent purpose.

Crown filed this suit. The first item of relief it seeks in the first count of its Complaint is a declaration "that the Offer was a bona fide offer." (Compl. ¶ 22(1)) Now, after only one deposition, Crown asks this Court to stay further discovery on this issue.[8] Such a result would be inconsistent with discovery practice under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b)(1) and (2)(C)(i) ("parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim" so long as "the discovery sought is [not] *unreasonably* cumulative or duplicative.") (emphasis added).

Crown's second motion for partial summary judgment is not ripe for adjudication. It will be dismissed without prejudice with leave to renew after discovery is complete.[9]

---

[8] Crown's Motion to Stay Discovery is presently pending before Magistrate Judge Donio. It appears that McDonald's has noticed the depositions of four witnesses and subpoenaed the Master Trust's real estate appraiser. Crown opposes the depositions and seeks to quash the subpoena on various grounds. Some of Crown's arguments may be rendered moot by this Opinion and accompanying Order, but others may not. The undersigned holds only that McDonald's is entitled to pursue additional discovery of facts relevant to the bona fide offer issue. The nature and extent of that discovery, however, will be left for Magistrate Judge Donio to address when ruling on the Motion to Stay Discovery.

[9] Crown has also moved to seal Exhibit 4 to its second motion for partial summary judgment. McDonald's has not opposed the motion.
   Exhibit 4 is the Crown, Cork & Seal Master Trust Agreement. It has been designated "confidential" pursuant to the Court's discovery confidentiality order entered on March 7, 2013. The document contains non-public information concerning the Master Trust's investment strategies and administration of employee benefits. After considering the factors set forth in Local Civil

**IV.**

For the foregoing reasons, Crown's first motion for partial summary judgment will be granted; its second motion for partial summary judgment will be dismissed without prejudice; and its motion to seal will be granted. An appropriate Order accompanies this Opinion.

November 7, 2013                       __s/ Joseph E. Irenas_____
                                       Joseph E. Irenas, S.U.S.D.J.

---

Rule 5.3 governing motions to seal, the Court concludes that sealing Exhibit 4 is appropriate.